# IN THE SUPREME COURT OF IOWA

No. 12–1927

Filed February 22, 2013

**IN THE MATTER OF THE ESTATE OF
MARY FLORENCE WHALEN,** Deceased.

**MICHAEL WHALEN,**
      Appellant.

_____

Appeal from the Iowa District Court for Jones County, Paul D. Miller, Judge.

Decedent's surviving spouse appeals probate court's ruling ordering decedent to be buried in Montana as instructed in her will. **REVERSED AND REMANDED WITH INSTRUCTIONS.**

Chad D. Brakhahn and Larry G. Gutz of Simmons Perrine Moyer Bergman, PLC, Cedar Rapids, for appellant (until withdrawal), and then Michael J. Whalen, Anamosa, pro se.

Brad J. Brady, Robert J. O'Shea, and Ann E. Brown-Graff of Brady & O'Shea PC, Cedar Rapids, for appellee.

**WATERMAN, Justice.**

This expedited appeal requires our court to decide whether the Final Disposition Act, Iowa Code chapter 144C (2011), allows the surviving spouse to disregard his wife's written instructions on where to bury her remains. The decedent's last will and testament and her correspondence with family members included specific directions to bury her in a plot she had already purchased at a cemetery in Billings, Montana. Her surviving husband instead seeks to bury her in Iowa and claims the sole right to decide because decedent had never executed a declaration under chapter 144C designating anyone else to make that decision. The probate court granted a resisted motion by the executor of the estate (decedent's sister) compelling burial in Montana. We reverse because the operative statutory language, as enacted in 2008, requires enforcement of the surviving spouse's decision. We may not rewrite the statute to second-guess the policy choices codified by our legislature.

## I. Background Facts and Proceedings.

Mary Florence Whalen (Flo) died on June 9, 2012, in Anamosa, Iowa, survived by her husband, Michael Whalen, and ten adult children. Flo had lawfully executed her last will and testament in New Mexico on October 29, 2009, in front of two witnesses whose signatures were notarized. Flo's will disposed of all of her property, named her sister, Mary Ann McCluskey, as her personal representative and executor, and provided instructions for the disposition of her body as follows:

> I direct that my bodily remains be buried in a moderately priced wooden coffin in Grave 1, Lot 3302, Section A, in the Holy Cross Cemetery, Billings, Montana. I further direct that my funeral mass be celebrated at Saint Patrick's Co-Cathedral in Billings, Montana, no matter where I die.

Flo had purchased that burial plot three years earlier. Flo repeatedly had expressed her desire to be buried in Billings in conversations and correspondence with her children, sister, and husband, and in her previous wills.

Flo and Michael were married in 1952 and moved from Anamosa, Iowa, to Billings, Montana, in 1953. From 1953 until 1996, Flo and Michael lived together in Billings and raised ten children. In 1996, Michael and Flo separated, and Michael moved back to Anamosa, Iowa. Michael and Flo never divorced or legally separated.[1] Flo remained in Billings until 2004, when she moved to Santa Fe, New Mexico, where one of her daughters resided. Flo lived alone in a condominium in Santa Fe until December 2011 when she visited Iowa and became so ill she was unable to leave. Flo lived with Michael at his house in Anamosa until her death six months later. During that time, she registered to vote in Iowa.

Two months before her death, on April 10, 2012, Flo wrote a letter in the presence of her son, Jerry Whalen, reiterating her wish to be buried in Billings. In this letter to Michael, all ten of her children, and her sister, Flo wrote:

> I am writing this letter to all of you to let you know what I wish done with my earthly remains after my soul has gone hopefully upwards.
>
> I wish to be buried in Billings, Montana which I considered my home when on earth. I spent 51 years of my life in Billings and with the help of my dear husband, raised 10 beautiful children there. I bought a plot many years ago in Holy Cross Cemetery in Billings, in which to be buried and

---

[1]Under Iowa law, married spouses can legally separate by filing a petition for separate maintenance as provided in Iowa Code section 598.28 without dissolving their marriage. *See* 2 Marlin M. Volz, Jr., *Iowa Practice Series, Methods of Practice* § 31:31, at 869 (2012).

have paid for the opening and closing of my grave. I also have bought a casket made by the [Trappist] Monks in Peosta, Iowa, and they will ship it wherever they are asked at the time they are informed to do so.

I know that you all love me and want to honor my final requests, and that is why I am writing this to you. I just want all of you to know that this is very important to me and because you all love and respect me I know that you will see that my wishes are carried out.

At Flo's request, Jerry sent the letter to Flo's sister, Mary Ann, who was also her personal representative. On May 26, Mary Ann mailed a copy of this letter to each of Flo's ten children and to Flo's husband, Michael.

Mary Ann later spoke with John Scranton, the funeral director at the Goettsch Funeral Home in Anamosa, at Flo's request. Mary Ann provided him with Flo's April 2012 letter. Scranton was unaware of chapter 144C, which would have allowed Flo to designate someone who would have the right to control the disposition of Flo's remains. Scranton erroneously informed Mary Ann that Flo's husband, Michael, was the only person who could decide where Flo should be buried. Flo and her daughter, Annie-Laurie, went to the Goettsch Funeral Home on May 31 to speak with Scranton. Scranton again mistakenly stated that Michael would have the final say regarding the burial of her remains upon her death and that there was nothing Flo could do to change that.

After Flo's death, Mary Ann asked Scranton to have Flo's remains transported to Billings, Montana, in accordance with Flo's express wishes. Michael, however, directed that Flo's remains be buried in Anamosa. Scranton agreed to keep Flo's remains at the Goettsch Funeral Home until a final court order resolves where Flo's body is to be buried.

The Jones County probate court admitted Flo's will to probate and appointed Mary Ann to act as the executor of the estate on June 22. The

same day, Mary Ann moved for an order directing that Flo's remains be transported to Billings, Montana, as provided in her will. Mary Ann argued that Iowa Code section 144C.5 is inoperative because Flo had stated her "wishes regarding the method and location of burial and [chapter 144C] does not displace the common law that individuals have the right to direct where [their] remains will be buried." Consequently, Mary Ann argued that because section 144C.5 is inoperative, Michael, as Flo's surviving spouse, has no authority to make decisions regarding the disposition of Flo's remains. Michael opposed Mary Ann's motion and requested a ruling that he, as Flo's surviving spouse, has the right to control the final disposition of Flo's remains under the plain language of section 144C.5.

The probate court held an evidentiary hearing on July 30 during which four witnesses testified. On October 30, the probate court ruled against Michael:

> [T]he Court concludes the legislature's use of "devolves upon" in § 144C.5 was intended for a decision regarding disposition of remains to be made by an individual delineated in § 144C.5 only if a decision had not been made by a decedent. In this case, all evidence convincingly establishes that Mary Florence Whalen made the decision to have her remains buried in Billings, Montana, and she did not intend for anyone else to make that decision for her. Her intent could not be clearer. The Court's statutory interpretation, when combined with the Court's duty to see that Mary Florence Whalen's wishes are carried out as to her final resting place and the Court's deference to the testator's wishes regarding the method and location of burial, supports a conclusion that the Executor's Motion should be granted.

On the basis of this analysis, the probate court ordered "Mary Florence Whalen's remains . . . be transported to and buried in Billings, Montana, in accordance with the directions given in her Last Will and Testament."

Michael appealed. We retained the appeal and granted expedited review.

## II. Scope of Review.

Probate actions are tried in equity, except in specific delineated circumstances not applicable here. *See* Iowa Code § 633.33 (listing matters that are to be tried as law actions and noting that "all other matters triable in probate shall be tried by the probate court as a proceeding in equity"). Cases tried in equity are reviewed de novo. *In re Estate of Myers*, 825 N.W.2d 1, 4 (Iowa 2012) (citing Iowa R. App. P. 6.907). We give weight to the probate court's factual findings, particularly on the credibility of witnesses, but are not bound by them. *In re Trust No. T-1 of Trimble*, 826 N.W.2d 474, 482 (Iowa 2013). We review the probate court's interpretation of statutory provisions for corrections of errors at law. *In re Estate of Myers,* 825 N.W.2d at 3–4.

## III. Analysis.

The dispute in this case turns on whether Iowa's Final Disposition Act allows a surviving spouse to disregard the decedent's will directing disposition of her bodily remains. This case presents our first opportunity to interpret and apply this statute enacted in 2008. The executor argues, and the probate court agreed, that the Final Disposition Act leaves intact a person's common law right to decide where to be buried, with the statute to be applied only when a decedent failed to leave instructions regarding burial. Alternatively, the executor argues that, even if the statute preempts the common law, Flo's will effectively serves as a declaration under the Act designating her sister to decide her burial location. Michael disagrees. He contends the general assembly intended the Final Disposition Act to comprehensively govern who has the right to control the final disposition of a decedent's remains and to

supersede any common law right of the decedent to control that decision. We conclude Michael's interpretation is correct and that Flo's will does not comply with the statutory requirements for a declaration.

We begin our analysis by examining the operative language and history of the statutory enactment. We then consider the executor's argument that Flo's will satisfies the statutory requirements for a declaration under the Final Disposition Act.

**A. Iowa's Final Disposition Act.** The general assembly enacted the Final Disposition Act in 2008. *See* 2008 Iowa Acts ch. 1051, §§ 6–16. This Act

> allows an adult . . . to execute a written instrument called a declaration that is contained in or attached to a durable power of attorney for health care under Code Chapter 144B and that names a designee who has the sole responsibility and discretion for making decisions concerning the final disposition of that person's remains and the ceremonies to be performed after that person's death.

Legis. Servs. Agency, *2008 Summary of Legislation*, S.F. 473—Disposition of Human Remains—Authorization and Consent (Iowa 2008), *available at* https://www.legis.iowa.gov/DOCS/GA/82GA/Session.2/Summary/ summary 2008.pdf. "This Act responds to a perceived need for clarity as to who will determine the disposition of a decedent's remains." *Alcor Life Extension Found. v. Richardson*, 785 N.W.2d 717, 727 (Iowa Ct. App. 2010) (citing Ann M. Murphy, *Please Don't Bury Me Down in That Cold Cold Ground: The Need for Uniform Laws on the Disposition of Human Remains*, 15 Elder L.J. 381, 400–01 (2007)). The Act applies to all deaths occurring on or after July 1, 2008, and to declarations executed on or after that date. *See* 2008 Iowa Acts ch. 1051, § 22. The Act was in

effect when Flo died in 2012 and when Flo executed her will in New Mexico in 2009.[2]

Section 144C.5 of the Final Disposition Act provides, in relevant part:

> 1. The right to control final disposition of a decedent's remains or to make arrangements for the ceremony after a decedent's death vests in and *devolves upon* the following persons who are competent adults at the time of the decedent's death, in the following order:
>
> *a.* A designee, or alternate designee, acting pursuant to the decedent's declaration.
>
> *b.* The surviving spouse of the decedent, if not legally separated from the decedent, whose whereabouts is reasonably ascertainable.
>
> *c.* A surviving child of the decedent, or, if there is more than one, a majority of the surviving children whose whereabouts are reasonably ascertainable.

Iowa Code § 144C.5 (emphasis added). Section 144C.2 includes definitions of "declarant," "declaration," and "designee" as follows:

> 7. "Declarant" means a competent adult who executes a declaration pursuant to this chapter.
>
> 8. "Declaration" means a written instrument, contained in or attached to a durable power of attorney for health care under chapter 144B, that is executed by a declarant in accordance with the requirements of this chapter, and that names a *designee who shall have the sole*

---

[2]The executor cites to Montana and New Mexico statutes, which give effect to decedents' written instructions directing the disposition of their bodily remains. *See* Mont. Code Ann. § 37-19-903(3)(b) (West, Westlaw through all 2011 laws, 2011 Code Commissioner changes, and 2010 ballot measures) (permitting persons to provide "disposition directions," which may be "a letter of instructions, a will, a trust document, or advance directives"); N.M. Stat. Ann. § 24-12A-2(A) (West, Westlaw through the Second Reg. Sess. of the 50th Legislature) ("[I]f a decedent has left no written instructions regarding the disposition of the decedent's remains, the following persons in the order listed shall determine the means of disposition . . . ."). The executor, however, does not argue the law of either Montana or New Mexico governs this case. Accordingly, we will apply Iowa law in this dispute arising from Flo's death in Iowa after living her last six months here with her husband, Michael, an Iowa resident. *See Talen v. Emp'rs Mut. Cas. Co.*, 703 N.W.2d 395, 409 (Iowa 2005) (applying Iowa law when no party pleads and proves that a foreign law governs).

*responsibility and discretion for making decisions concerning the final disposition of the declarant's remains* and the ceremonies planned after the declarant's death.

9. "Designee" means a competent adult designated under a declaration *who shall have the sole responsibility and discretion for making decisions concerning the final disposition of the declarant's remains* and the ceremonies planned after the declarant's death.

*Id.* § 144C.2(7)–(9) (emphasis added).

Section 144C.3(2) further provides: "A declaration shall not include directives for final disposition of the declarant's remains . . . ." *Id.* § 144C.3(2). Rather, the declaration "shall name a designee who shall have the sole responsibility and discretion for making decisions concerning the final disposition of the declarant's remains." *Id.* § 144C.3(1). The plain language of the Act thereby permits a person to designate someone to make burial decisions, yet does not require the chosen designee to follow the decedent's wishes. Rather, the designee has the "sole responsibility and discretion for making decisions" regarding burial. *Id.*; *see also id.* § 144C.10 ("The designee . . . shall have the sole discretion . . . to determine what final disposition of the declarant's remains . . . are reasonable under the circumstances."). Presumably, the legislature chose this language to avoid protracted family disputes and mini-trials over the decedent's wishes. Although Flo's wishes are well established in this case, in other cases, the decedent's burial instructions may be ambiguous, impractical, or disputed with conflicting testimony from surviving family members. Costly and time-consuming litigation to resolve such disputes is avoided by a statute prescribing an identified living designee or family member to make the burial decision. The need for prompt decision making as to burial is reflected in the requirement that the designee act "within twenty-four hours of receiving notification of the death of the declarant or

within forty hours of the declarant's death, whichever is earlier." *Id.* § 144C.8(2).

Under the express terms of section 144C.5, the surviving spouse—here, Michael—holds the right to control disposition of the decedent's remains in the absence of a declaration designating someone else. Flo was estranged from Michael for many years, but they never divorced or legally separated. We must decide whether the probate court erred in ruling section 144C.5 is inapplicable when the decedent had left instructions for her burial. The probate court specifically concluded "the legislature's use of 'devolves upon' in § 144C.5 was intended for a decision regarding disposition of remains to be made by an individual delineated in § 144C.5 only if a decision had not been made by a decedent." The probate court relied on Iowa caselaw, recognizing that "our state historically has ranked the decedent's preferences highly." *Alcor,* 785 N.W.2d at 730 (citing *Thompson v. Deeds,* 93 Iowa 228, 231, 61 N.W. 842, 843 (1895) ("[I]t always has been, and will ever continue to be, the duty of courts to see to it that the expressed wish of one, as to his final resting place, shall, so far as it is possible, be carried out.")); *see also King v. Frame,* 204 Iowa 1074, 1079, 216 N.W. 630, 632 (1927) ("[T]he right of a person to provide by will for the disposition of his body has been generally recognized.").

We need not decide what rights Flo had at common law because we are convinced chapter 144C controls and preempts any conflicting common law.[3]

---

[3]The *Alcor* court enforced the decedent's anatomical gift of his remains under Iowa's Revised Uniform Anatomical Gift Act. *Alcor,* 785 N.W.2d at 727 (citing section 144C.10(4), which provides that "[t]he rights of a donee created by an anatomical gift

> The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to this Code. Its provisions and all proceedings under it shall be liberally construed with a view to promote its objects and assist the parties in obtaining justice.

Iowa Code § 4.2. The plain language of chapter 144C, its interplay with related statutes, and its drafting history make clear the statute controls who decides the disposition of bodily remains.

The Final Disposition Act on its face is a comprehensive, detailed enactment with twelve separate sections and numerous subdivisions. *See Walthart v. Bd. of Dirs. of Edgewood-Colesburg Cmty. Sch. Dist.*, 667 N.W.2d 873, 878 (Iowa 2003) (" 'Where the legislature has provided a comprehensive scheme for dealing with a specified kind of dispute, the statutory remedy provided is generally exclusive.' " (quoting *Van Baale v. City of Des Moines*, 550 N.W.2d 153, 155–56 (Iowa 1996))). Section 144C.5, governing the right to control disposition of remains, is cross-referenced in other statutes regulating the handling of human remains that were amended simultaneously in 2008. *See* 2008 Iowa Acts ch. 1051, §§ 1–3, 17–21 (amending sections 142.1, 144.34, 144.56, 331.802(3)(*h*), 331.802(8), 331.804(1), 331.805(3)(*b*), and 523I.309 to include reference to the "person authorized to control the deceased person's remains under section 144C.5"). "We read interrelated statutes together in a manner that harmonizes them if possible." *In re Trust No. T-1 of Trimble*, 826 N.W.2d at 483; *see also In re Estate of Bockwoldt*, 814 N.W.2d 215, 223 (Iowa 2012) (" 'We also consider the legislative history of a statute . . . when ascertaining legislative intent.' " (quoting *Doe v. Iowa Dep't of Human Servs.*, 786 N.W.2d 853, 858 (Iowa 2010))). Significantly,

---

pursuant to chapter 142C are superior to the authority of a [chapter 144C] designee"). No such anatomical gift is at issue here.

the legislature nowhere required enforcement of the decedent's wishes in the 2008 enactments. To the contrary, as we review below, the 2008 legislature removed a related statutory provision that specifically gave the decedent control over disposition of his or her remains and substituted language giving sole control to the decision maker identified under section 144C.5. The legislature also rejected proposed language that would have required designees to effectuate decedents' instructions.

Against this backdrop, we can find no latent ambiguity in the plain language of section 144C.5(1)(*b*), which gives "the right to control final disposition" of Flo's remains to Michael, as her surviving spouse, with no accompanying requirement that he follow her instructions. *See Rieff v. Evans*, 630 N.W.2d 278, 285 (Iowa 2001) ("[I]f statutory authority has preempted a right provided by case precedent, the common law must give way."); *Eddy v. Casey's Gen. Store, Inc.*, 485 N.W.2d 633, 637 (Iowa 1992) ("For this court to formulate its own particular version of a common law negligence claim, despite the specific scheme provided by the dramshop act, would be to judicially repeal the act."). If the same legislature that prevented declarants from giving their chosen designees binding burial instructions in chapter 144C wanted to require the surviving spouse to follow such instructions, it would have said so expressly. It did not.

The best evidence that the legislature intended chapter 144C to govern the final disposition of a decedent's remains to the exclusion of any common law obligation to implement the decedent's wishes can be found by examining the simultaneous changes the legislature made to section 523I.309 of the Iowa Cemetery Act. Before the 2008 amendments made pursuant to Senate File 473, this section stated in relevant part:

13

1. Any available member of the following classes of persons, in the priority listed shall have the right to control the interment, relocation, or disinterment of a decedent's remains within or from a cemetery:

*a.* The surviving spouse of the decedent, if not legally separated from the decedent.

*b.* The decedent's surviving adult children. . . .

. . . .

3. *A person may provide written directions for the interment, relocation, or disinterment of the person's own remains in a prepaid funeral or cemetery contract, or written instrument signed and acknowledged by the person. The directions may govern the inscription to be placed on a grave marker attached to any interment space in which the decedent had the right of interment at the time of death and in which interment space the decedent is subsequently interred. The directions may be modified or revoked only by a subsequent writing signed and acknowledged by the person. A person other than a decedent who is entitled to control the interment, relocation, or disinterment of a decedent's remains under this section shall faithfully carry out the directions of the decedent to the extent that the decedent's estate or the person controlling the interment, relocation, or disinterment is financially able to do so.*

Iowa Code § 523I.309 (2007) (emphasis added). The amendments accompanying the enactment of the Final Disposition Act simplified section 523I.309 by substituting the list of persons who "shall have the right to control the interment, relocation, or disinterment of a decedent's remains within or from a cemetery" with the person authorized to control the final disposition of the decedent's remains under section 144C.5. Section 523I.309(1) now provides, "A person authorized to control the deceased person's remains under section 144C.5 shall have the right to control the interment, relocation, or disinterment of a decedent's remains within or from a cemetery." *Id.* § 523I.309 (2011). Significantly, the 2008 amendment also eliminated subsection 3, which previously allowed a person such as Flo to "provide written directions for the interment . . . of [her] own remains in a . . . written instrument [she] signed and

acknowledged" and would have required a surviving spouse, to "faithfully carry out" the directions provided in her will. *See* 2008 Iowa Acts ch. 1051, § 21. The fact that the legislature eliminated this provision in the same bill in which it enacted the Final Disposition Act confirms the legislature chose not to allow persons to leave burial instructions that would be binding on their survivors.

The drafting history of Iowa's Final Disposition Act further shows the legislature decided against requiring survivors to follow the written instructions of the decedent beyond the choice of a designee. Senate File 473—providing a new Code chapter originally titled "Final Disposition Directives Act"—included a provision that would have allowed the declaration to include "the declarant's wishes for the type of final disposition of the declarant's remains, location of the final disposition, type of ceremony, location of ceremony, and organ donation consistent with chapter 142C." S.F. 473 (Reprinted), 82d G.A., 1st Sess. (Iowa 2007). The designee was required to "act in good faith to fulfill the directives . . . in a manner that is reasonable under the circumstances." *Id.*

After passing the senate, Senate File 473 was referred to the Human Resources Committee in the house. This committee ultimately recommended that the senate's version of the bill be amended and then passed. The house committee's proposed amendment eliminated the ability of declarants to include directives as to the final disposition of their remains and the ceremony to be conducted after their death. This version of the bill, with the new chapter renamed the "Final Disposition Act," passed the senate and house and was signed into law in April 2008. *See* 2008 Iowa Acts ch. 1051, §§ 6–16.

A comparison of the bill, as originally introduced with the law the legislature ultimately enacted, reveals the legislature chose the clarity and certainty that comes with a specified living decision maker who has sole discretion over burial decisions, instead of requiring the living to enforce the decedent's instructions regarding burial. For example, the proposed legislation initially defined the "designee" as someone the declarant designates to implement the declarant's instructions, yet the codified definition of "designee" omits that requirement. *Compare* S.F. 473 (Reprinted), 82d G.A., 1st Sess. (Iowa 2007) (defining "designee" as "a competent adult designated under a declaration to implement the declarant's wishes contained in the declaration"), *with* Iowa Code § 144C.2(9) (defining "designee" as "a competent adult designated under a declaration who shall have sole responsibility and discretion for making decisions concerning the final disposition of the declarant's remains"). Section 144C.3(2) further demonstrates the legislature's deliberate choice to stop short of allowing the declarant to control the designee: "A declaration shall not include directives for final disposition of the declarant's remains and shall not include arrangements for ceremonies planned after the declarant's death."

In light of the foregoing legislative history, we believe chapter 144C reflects that the legislature made a deliberate policy choice to favor clarity and certainty over ability of persons to control the final disposition of their own bodies. Section 144C.5 provides certainty by listing sequentially the individuals who will have "[t]he right to control final disposition of a decedent's remains." This same section gives decedents some measure of control over the final disposition of their remains by putting the designee at the top of the list, above even the surviving spouse. *See* Iowa Code § 144C.5(1). In most cases, the designee or

surviving family member with the right to control will voluntarily honor the decedent's wishes. If Flo had properly designated her sister pursuant to chapter 144C, Flo's remains would be buried in Montana today. It is not our role to rewrite chapter 144C to reach the result sought by the executor here.[4]

We hold the Final Disposition Act displaced any common law right requiring a surviving spouse to follow the decedent's instructions on burial. We next consider whether Flo's will serves as a declaration under this Act.

**B. Whether Flo's Will Serves as a Declaration Under Chapter 144C.** The executor contends Flo's will effectively serves as a declaration designating the executor to make her burial decisions pursuant to

---

[4]Other state legislatures, in addition to those in Montana and New Mexico as discussed in footnote two, have enacted statutory schemes that allow decedents to control the disposition of their remains after death. *See, e.g.,* Colo. Rev. Stat. Ann. §§ 15-19-101 to -109 (West, Westlaw through ch. 2, 1st Reg. Sess. of the 69th General Assembly (2013)) (setting forth Colorado's "Disposition of Last Remains Act" and including section 15-19-102(1)(a), which states that "[a] competent adult individual has the right and power to direct the disposition of his or her remains after death and should be protected from interested persons who may try to impose their wishes regarding such disposition contrary to the deceased's desires"); Del. Code Ann. tit. 12, §§ 260–270 (West, Westlaw through 78 Laws 2012, chs. 204–409 and technical corrections received from the Delaware Code Revisors for 2012 Acts) (setting forth an act with a similar statutory structure and language to Iowa's Final Disposition Act, but including section 263(d), which provides that "[t]he directions of a declarant expressed in a declaration instrument shall be binding on all persons as if the declarant were alive and competent"); Minn. Stat. Ann. § 149A.80 (West, Westlaw through end of 2012 1st Spec. Sess.) (expressly permitting "[a] person [to] direct the preparation for, type, or place of that person's final disposition . . . by written instructions" and requiring "[t]he person or persons otherwise entitled to control the final disposition under this chapter [to] faithfully carry out the reasonable and otherwise lawful directions of the decedent to the extent that the decedent has provided resources for the purpose of carrying out the directions"). Such language is missing from Iowa Code chapter 144C. *See generally* Tracie M. Kester, Note, *Uniform Acts—Can the Dead Hand Control the Dead Body? The Case for a Uniform Bodily Remains Law*, 29 W. New Eng. L. Rev. 571 (2007) (discussing the varying common law and statutory approaches of a number of states and advocating for the adoption of a uniform law governing the disposition of human remains at death).

chapter 144C. Section 144C.6(1) provides the following sample form for a declaration executed pursuant to the Final Disposition Act:

> I hereby designate ................ as my designee. My designee shall have the sole responsibility for making decisions concerning the final disposition of my remains and the ceremonies to be performed after my death. This declaration hereby revokes all prior declarations. This designation becomes effective upon my death.
>
> My designee shall act in a manner that is reasonable under the circumstances.
>
> I may revoke or amend this declaration at any time. I agree that a third party (such as a funeral or cremation establishment, funeral director, or cemetery) who receives a copy of this declaration may act in reliance on it. Revocation of this declaration is not effective as to a third party until the third party receives notice of the revocation. My estate shall indemnify my designee and any third party for costs incurred by them or claims arising against them as a result of their good faith reliance on this declaration.
>
> I execute this declaration as my free and voluntary act.

Flo's will does not contain the foregoing language. Section 144C.6(2) provides the declaration "shall be in a written form that substantially complies with the [sample] form." Additionally, the declaration must be

> contained in or attached to a durable power of attorney for health care under chapter 144B, and [must be] dated and signed by the declarant or another person acting on the declarant's behalf at the direction of and in the presence of the declarant. In addition, a declaration shall be either of the following:
>
> *a.* Signed by at least two individuals who are not named therein and who, in the presence of each other and the declarant, witnessed the signing of the declaration by the declarant, or another person acting on the declarant's behalf at the direction of and in the presence of the declarant, and witnessed the signing of the declaration by each other.

*b.* Acknowledged before a notarial officer as provided in chapter 9B.[5]

Flo and two witnesses signed her will in the presence of a notary, which satisfies the formal execution requirements of section 144C.6(2)(*a*)–(*b*). However, there is no evidence or claim that her will was "contained in or attached to a durable power of attorney for health care" as expressly required by section 144C.6(2). The legislature could choose to require placement of the declaration with the durable power of attorney for health care to help ensure it is accessible for time-sensitive end-of-life decision making. "In many instances, a will may not be located until after the decedent's body has been interred, at which point it may be too late to follow the decedent's wishes." Tracie M. Kester, Note, *Uniform Acts—Can the Dead Hand Control the Dead Body? The Case for a Uniform Bodily Remains Law*, 29 W. New Eng. L. Rev. 571, 584 (2007). We are not permitted to rewrite Iowa Code section 144C.6(2) to eliminate the requirement the declaration accompany the durable power of attorney for health care. We also note the will includes burial instructions the statutory declaration is forbidden to contain. *See* Iowa Code § 144C.3(2) ("A declaration shall not include directives for final disposition of the declarant's remains . . . ."). Accordingly, we cannot regard Flo's will as constituting a declaration designating her sister within the meaning of section 144C.5(1)(*a*).

Unless Michael voluntarily permits Flo's burial in Montana, our decision will leave her wishes unfulfilled. This is because " '[w]e may not extend, enlarge, or otherwise change the meaning of a statute under the guise of construction.' " *In re Estate of Bockwoldt*, 814 N.W.2d at 223

---

[5]The legislature's recent amendment of this subsection took effect January 1, 2013. *See* 2012 Iowa Acts ch. 1050, § 39.

(quoting *Doe*, 786 N.W.2d at 858). Policy arguments to amend the statute should be directed to the legislature. *See In re Estate of Myers*, 825 N.W.2d at 8.

### IV. Conclusion.

For the reasons stated, the probate court erred in concluding that the decedent's wishes trumped her surviving husband's right to control disposition of her remains under the Final Disposition Act. The probate court order is reversed and the case remanded for an order allowing Michael to direct burial of Flo's remains.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**

All justices concur except Cady, C.J., and Zager, J., who dissent.

**CADY, Chief Justice (dissenting).**

Respectfully, I dissent. Our legislature intended for the Final Disposition Act to designate and empower a line of authority to make the decisions pertaining to the arrangements for the funeral and final disposition of the remains of a person who has died. The statute did not intend to replace the timeless and fundamental ability of people to otherwise make those decisions for themselves and preserve them in their last will and testament, with the full measure of peace and confidence that they would be honored after death, so as to avoid any disputes and make it unnecessary for others to make the decisions.

The Final Disposition Act was a practical response by our legislature to a very real problem. As in this case, family members and others can unfortunately disagree following the death of a person over the funeral arrangements and final disposition of the body. *See Alcor Life Extension Found. v. Richardson*, 785 N.W.2d 717, 727 (Iowa Ct. App. 2010) (recognizing the Act sought to provide clarity about who would determine issues over the final disposition of a person's remains after death). To resolve these disputes, the legislature simply designated a line of people empowered to make these decisions to the exclusion of every other living person. The order of this line of authority is based on logic and natural symmetry. Consistent with this approach, this line of authority begins with the person who the decedent has designated pursuant to the Act to make the decisions. Importantly, this designee— and every other person in the line of authority—becomes the sole decision maker and the person who has made the designation is not allowed to include any specific directives to bind the decision of the designee. Iowa Code § 144C.3(2) (2011). The Act explicitly gives each

person in the line of authority the sole responsibility and discretion to make the decision after the death of the person. *Id.* The Act is totally independent of the autonomy of a person to make his or her own decision prior to death. The legislature sought only to resolve disputes that occur when a decedent leaves no directions behind, not deprive decedents of the right to make the decisions.

Our task in interpreting statutes is to give effect to the intent of the legislature. *Andover Volunteer Fire Dep't v. Grinnell Mut. Reins. Co.*, 787 N.W.2d 75, 81 (Iowa 2010). To carry out this duty, we discern the intent of the legislature from the words and content of the statute, as well as its purpose. *Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 590 (Iowa 2004). Within the framework of the Final Disposition Act, these factors all reveal the statute has no application if a testator has provided his or her own directives. First, the Act exists only to resolve disputes. When a testator has provided advance directives, the directives eliminate any dispute, and the statute has no application. When we interpret statutes, we seek to effectuate their purpose and fix the problem sought to be remedied. *Lee v. Grinnell Mut. Reins. Co.*, 646 N.W.2d 403, 407 (Iowa 2002). We do not interpret statutes to address matters that are not part of the problem sought to be fixed by any legislature.

Second, the designation scheme under the statute exists only to allow the decedent to designate a person to be placed ahead of the natural order of decision makers designated by the legislature. This process is totally unrelated to the independent power of the testator to direct his or her own funeral arrangements and final disposition of remains. The two approaches operate independently with perfect harmony. As with the disposition of property by decedents, the two approaches allow a person to make his or her own arrangements by

making declarations in a will or to allow for decisions that must be made following death to be decided by the statutory scheme. Thus, the implementation of a legislative scheme for a decedent to establish a decision maker does not preclude the more fundamental ability of a testator to preempt the operation of the Final Disposition Act by making the relevant decisions for himself or herself prior to death.

Finally, I am confident our legislature did not intend to deprive a testator of the right of self-determination by requiring testators to designate a person to make these personal determinations after death without the ability to provide any direction. Our society has justifiably attached deep significance and meaning to the final wishes expressed by people. These intentions are often intimate and sensitive, dealing not just with finances or property, but delicate personal matters, including the transition from the corporal to the spiritual. For centuries the last expression of bodily autonomy has been received with solemnity and honored by our laws to the fullest practical extent when declared with the formality of the last will and testament. *See Thompson v. Deeds*, 93 Iowa 228, 231, 61 N.W. 842, 843 (1895) ("[I]t always has been, and ever will continue to be, the duty of courts to see to it that the expressed wish of one, as his final resting place, shall, so far as it is possible, be carried out."). Last wishes are sacrosanct, and every law or statute concerning last wishes has been constructed solidly upon this fundamental, common understanding. We strive to interpret statutes consistent with the common law unless the language of the statute "clearly" negates the common law. *State v. Carter*, 618 N.W.2d 374, 377 (Iowa 2000). This statute did not clearly negate our rich common law that has always protected our last wishes to claim our final resting place. This statute is no exception.

I am confident our legislature did not intend the result of this case, nor to render future generations of Iowans powerless to direct for themselves their funeral arrangements and final disposition of their remains.

Zager, J., joins this dissent.