**IN THE COURT OF APPEALS OF IOWA**

No. 14-1341
Filed August 19, 2015

IN THE MATTER OF THE ESTATE OF
ROBERT L. WEBER, Deceased,

HELEN WEBER,
        Plaintiff-Appellant,

vs.

KRISTIE S. BRINCKS, Fiduciary of the
Estate of ROBERT L. WEBER,
        Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Clayton County, Bradley J. Harris,

Judge.


        Helen Weber appeals a district court order upholding a prenuptial

agreement. **AFFIRMED.**



        James Burns of Miller, Pearson, Gloe, Burns, Beatty & Parrish, P.L.C.,

Decorah, for appellant.

        Roger L. Sutton of Sutton Law Office, Charles City, for appellee.


        Heard by Danilson, C.J., and Vaitheswaran and Doyle, JJ.

**VAITHESWARAN, J.**

Helen Weber appeals a district court order upholding a prenuptial agreement.[1]

## I. Background Facts and Proceedings

Helen and Robert Weber signed a prenuptial agreement before their 2003 marriage. In pertinent part, the parties agreed to "retain the title, management, and control of the estate owned by him or her" together with increases and additions, "entirely free and unmolested by the other party." Additionally, they agreed that "at the death of either," "no claim by inheritance, descent, dower, curtesy, homestead, distributive share, support, maintenance, or other statutory right [would] be made by either of the parties hereto against the other, or against the estate of the other."

The prenuptial agreement also contained agreements (1) "to purchase ten year term life insurance on the life of Robert L. Weber, with Helen [] as the beneficiary, in whatever an amount which will have a premium between One Thousand Dollars ($1000.00) and One Thousand Four Hundred Dollars ($1400.00) per year," and (2) "to make Helen [Robert's] beneficiary on all life insurance, credit union accounts, and retirement benefits."

Robert died in 2010. His daughter was appointed executor of his estate. Helen filed an "election of surviving spouse to take elective share" and a claim in probate. Alternatively, she sought (1) $100,000 "for life insurance proceeds due" under the prenuptial agreement and (2) payment of $12,552.16 "for the value of

---

[1] A notice of cross-appeal was filed, which included a request for appellate attorney fees, but at oral argument the estate agreed it was abandoned.

an Individual Retirement Account," which she asserted constituted "retirement benefits" under the prenuptial agreement.

Following trial, the district court concluded Iowa's statute on prenuptial agreements governed the enforceability of the agreement and Helen "failed to prove [] the prenuptial agreement was either revocable or unenforceable in its entirety." Accordingly, the court denied Helen's election to take the spousal share of the estate.

The court proceeded to Weber's alternate claims for reimbursement of insurance and retirement funds alleged to be due under the prenuptial agreement. The court denied the insurance-based request, reasoning "the provision of the prenuptial agreement requiring purchase of a term life policy" was unenforceable because Robert was "uninsurable after 2003." The court denied the IRA-based request on the ground "an IRA is not a retirement benefit as contemplated by the Prenuptial Agreement" and "as such, may be disposed of by Robert . . . as he chooses." Helen appealed.

## II.    *Scope of Review*

As a preliminary matter, the parties disagree on our scope of review. Helen argues for de novo review and the estate asserts our review is for errors at law.

We believe our review is de novo. *See In re Estate of Spurgeon*, 572 N.W.2d 595, 597 (Iowa 1998) (reviewing spouse's election to take against will and effect of premarital agreement de novo); *In re Estate of Shaffer v. Hewer*, No. 08-0653, 2009 WL 606003, at *1 (Iowa Ct. App. Mar. 11, 2009) (reviewing district court's denial of an election to take against a will de novo); *see also In re*

*Marriage of Shanks*, 758 N.W.2d 506, 510-11 (Iowa 2008) (reviewing premarital agreement in divorce proceeding de novo). While the estate is correct that certain actions are subject to review on error, this type of review is the exception rather than the rule. *See In re Estate of Whalen*, 827 N.W.2d 184, 187 (Iowa 2013) (citing Iowa Code § 633.33 (2011)) ("Probate actions are tried in equity, except in specifically delineated circumstances.").[2]

### III.    Abandonment of Prenuptial Agreement

Helen contends:

> The [district] court erred in ruling that the prenuptial agreement prevented [her] from electing against the will where it was shown that Robert, by his failure to abide by terms of the prenuptial agreement and by his acts inconsistent with the prenuptial agreement, had abandoned the prenuptial agreement, and the prenuptial agreement was of no force and effect so that [she] was entitled to take against the will.

In support of her abandonment claim, she relies on an Iowa Court of Appeals opinion predating the enactment of Iowa Code chapter 596. *See In re Marriage of Christensen*, 543 N.W.2d 915, 918 (Iowa Ct. App. 1995). There, this court approved the concept of abandonment of prenuptial agreements, as follows:

> [W]e construe and treat antenuptial agreements in the same manner as we do ordinary contracts. Thus, such agreements can be abandoned in the same manner as any contract.
>     Abandonment of a contract is the relinquishment, renunciation or surrender of a right. Whether or not an abandonment occurred depends upon the party's intent to abandon and acts evidencing such an intent. The act of abandonment must be unequivocal and decisive.
>     A contract may be abandoned through conduct inconsistent with the continued existence of the contract. Parties who engage in behavior inconsistent with the continued existence of a contract

---

[2] Section 633.33 sets forth exceptions for "[a]ctions to set aside or contest wills, for the involuntary appointment of guardians and conservators, and for the establishment of contested claims."

may estop themselves from asserting any rights established by the contract.

*Christensen*, 543 N.W.2d at 918 (internal citations omitted).

The district court declined to apply the common law abandonment doctrine articulated in *Christensen*, reasoning as follows:

> [Helen claims] [t]he court should amend its ruling and find that decedent Robert L. Weber abandoned the prenuptial agreement. Plaintiff's argument regarding this matter is based upon the case of *In re Marriage of Christensen*, 543 N.W.2d 915 (Iowa [Ct. App.] 1995). The *Christensen* case involved an antenuptial agreement entered into by the parties prior to their marriage in May of 1978. Iowa Code Section 596.12 provides "This chapter takes effect on January 1, 1992, and applies to any prenuptial agreement executed on or after that date. This chapter does not affect the validity of Iowa law of any premarital agreement entered into prior to January 1, 1992." The antenuptial agreement at issue in *Christensen* was not controlled by Chapter 596, Code of Iowa. The antenuptial agreement at issue in this matter was executed on October 30, 2003. This antenuptial agreement is controlled by Chapter 596, Code of Iowa. Section 596.7, Code of Iowa, sets forth that a prenuptial agreement may be revoked only as set forth in said section. Abandonment as argued by plaintiff as a ground to revoke the prenuptial agreement is not included in Section 596.7. Plaintiff's Motion to Amend based upon abandonment of the prenuptial agreement by Robert L. Weber should be denied.

We are inclined to agree that chapter 596 supersedes the common law doctrine of abandonment. *See* Iowa Code §§ 596.7, .8 (enumerating specific grounds for revoking or enforcing premarital agreements and making no mention of abandonment); Iowa Code § 596.12 ("This chapter takes effect on January 1, 1992, and applies to any premarital agreement executed on or after that date. This chapter does not affect the validity under Iowa law of any premarital agreement entered into prior to January 1, 1992."); *Shanks*, 758 N.W.2d at 511 ("In Iowa, premarital agreements executed on or after January 1, 1992, are

subject to the requirements of the Iowa Uniform Premarital Agreement Act (IUPAA), codified in Iowa Code chapter 596."); *In re Estate of Martin*, 938 A.2d 812, 819 (Maine 2008) (holding uniform premarital agreement act adopted by Maine legislature superseded common law concepts applicable to premarital agreements). However, we need not definitively resolve this issue because, even if the abandonment doctrine were still viable, it was not proved.

"Whether or not abandonment occurred depends upon the party's intent to abandon and acts evidencing such an intent. The act of abandonment must be unequivocal and decisive." *See Christensen*, 543 N.W.2d at 918. By Helen's own concession, Robert's act of abandonment was not decisive. The following example is illustrative.

The premarital agreement stated the parties were building a house on property owned by Robert. The agreement stated the real estate would be transferred "into the names of both parties as joint tenants with full rights of survivorship." Helen acknowledged this was done. Her concession that Robert complied with this term of the prenuptial agreement disproves her claim of abandonment.[3]

---

[3] We acknowledge that Robert's attempt to transfer the residence via a codicil is evidence inconsistent with the terms of the prenuptial agreement and may serve as evidence of his intent to abandon or renunciate the contract. However, as Helen concedes, it had no legal effect. Robert continued to own an undivided one-half interest in the property until his death and the property became fully owned by Helen at Robert's death because of her rights of survivorship. In addition to intent to establish abandonment, there must be an act of abandonment that is unequivocal and decisive. *See Christensen*, 543 N.W.2d at 918. Thus, if abandonment or renunciation remains as a principle to support rescission or breach of an antenuptial agreement, no such act was proved upon these facts.

Helen does not rely on any statutory grounds to revoke the premarital agreement or find it unenforceable. Accordingly, we conclude the premarital agreement was valid and enforceable.

## IV. *Life Insurance*

As noted, the premarital agreement contained the following provision:

> Robert L. Weber and Helen Harford agree to purchase ten year term life insurance on the life of Robert L. Weber, with Helen [] as the beneficiary, in whatever an amount which will have a premium between One Thousand Dollars ($1000.00) and One Thousand Four Hundred Dollars ($1400.00) per year.

Robert did not purchase life insurance. The district court determined he "was uninsurable after year 2003" and, accordingly, the cited provision was "unenforceable." The court based its decision on record evidence, including the testimony of two experts. The court found the estate's expert more reliable.

We generally give weight to a district court's credibility findings. *See In re Trust No. T–1 of Trimble*, 826 N.W.2d 474, 482 (Iowa 2013) ("When reviewing factual findings, particularly on the credibility of witnesses, we give weight to the probate court's findings, but we are not bound by them."); *see also* Iowa R. App. P. 6.904(3)(g). But, in our view, resolution of this issue does not turn on the credibility of dueling experts because the experts were in accord on the key issue of Robert's ability to comply with the insurance provision of the prenuptial agreement.

Both experts agreed Robert was not "uninsurable." The estate's expert testified, "I wouldn't say that he was completely uninsurable." Helen's expert testified Robert "would have gotten insurance, in all likelihood," had he followed through with the medical portion of an application he began in 2003.

The real question was whether Robert could have obtained a $100,000 policy at the rates specified in the prenuptial agreement. Both experts also essentially agreed on the answer to this question. After enumerating Robert's medical conditions, the estate's expert opined Robert could not have obtained a $100,000 ten-year level term life insurance policy for a price of between $1000 and $1400 per year as specified in the prenuptial agreement. In his view, the premium would have been in excess of $3600 per year. Similarly, Helen's expert characterized the numbers he ran as simply estimates, which "could have been higher or lower" based on Robert's medical conditions. The expert stated the insurance company to whom Robert submitted his insurance application never extended him an offer at the rates specified in the prenuptial agreement, or at any rate, given his refusal to proceed with the medical portion of the application.

Because Helen failed to prove Robert could get a $100,000 policy at the rate of $1000–$1400 per year, she was not entitled to enforcement of the insurance provision in the prenuptial agreement.[4] We affirm the district court's denial of Helen's request for $100,000 from the estate.

## V.    IRA

Helen contends the district court should have required the estate to pay her $12,552.16—the value of an Individual Retirement Account purchased by Robert after the marriage. Robert named his daughter as beneficiary of the IRA. Helen argues Robert's disposition contravened the prenuptial provision requiring

---

[4] This is not a case of impossibility of performance. *See Nora Springs Co-op. Co. v. Brandau*, 247 N.W.2d 744, 747 (Iowa 1976) ("The doctrine of impossibility of performance is recognized in Iowa as an excuse for nonperformance generally where that which has been promised becomes objectively impossible to perform due to no fault of the nonperforming party."). This is simply a case of failure of proof.

him "to make Helen [] his beneficiary on all life insurance, credit union accounts, and *retirement benefits.*" (Emphasis added).

The district court concluded the IRA was "not a retirement benefit as contemplated by the prenuptial agreement" but was "after-acquired property of Robert L. Weber and as such, may be disposed of by Robert L. Weber as he chooses." In its ruling on post-trial motions, the court further stated:

> Evidence was presented that Robert L. Weber had retirement benefits from his employment at the time the prenuptial agreement was executed. An IRA account is distinct and different from a retirement benefit as contemplated by the prenuptial agreement. Plaintiff's argument that an IRA account and a retirement benefit are synonymous is without merit.

We agree that, under the particular circumstances of this case, Helen failed to prove the IRA was a retirement benefit. She did not establish the source of the funds that went into the IRA or Robert's intent to treat the IRA as a retirement "benefit." *See In re Marriage of Gall*, No. 08-0736, 2008 WL 4725402, at *2 (Iowa Ct. App. Oct. 29, 2008) (noting transfer of funds was a "tax maneuver" to reduce tax liability). Accordingly, we affirm the district court's refusal to award Helen the requested value of the IRA.

**AFFIRMED.**