# IN THE COURT OF APPEALS OF IOWA

No. 20-0485
Filed June 16, 2021

**IN THE MATTER OF THE ESTATE OF DAVID DWIGHT NOEL, Deceased.**

**MYRLE ATWOOD-NOEL,**
     Claimant-Appellant/Cross-Appellee,

**vs.**

**JULIE A. HASTINGS,**
     Executor-Appellee/Cross-Appellant.

_____

Appeal from the Iowa District Court for Warren County, Patrick W. Greenwood, Judge.

Myrle Atwood-Noel appeals and the estate cross-appeals from the district court's ruling in probate. **AFFIRMED ON APPEAL; REVERSED ON CROSS-APPEAL.**

Robert L. Stuyvesant of Stuyvesant, Benton & Judisch, Carlisle, for appellant.

Mason J. Ouderkirk of Ouderkirk Law Firm, Indianola, for appellee.

Heard by Bower, C.J., and Tabor and Ahlers, JJ.

**AHLERS, Judge.**

The wife of the decedent of this estate action seeks reversal of the district court's order enforcing a prenuptial agreement that prohibits the wife from taking the spousal election against the decedent's will. The decedent's estate cross-appeals, seeking reversal of the district court's order permitting the wife to recover certain expenses from the estate under a theory of unjust enrichment. We agree with the district court that the prenuptial agreement is enforceable and the wife cannot claim the spousal election against the will. However, we find no unjust enrichment in the wife paying the expenses she attributes to the decedent and arising during their marriage.

## I.     Background Facts and Proceedings

David Noel was born in 1939 and died on February 19, 2019. Myrle Atwood-Noel was born in 1953. David and Myrle married on March 15, 2010. Three days prior to their marriage, David and Myrle signed a prenuptial agreement (the Agreement). Under one provision of the Agreement, "[e]ach party shall retain complete title, management and control of said party's separate property, including property acquired separately by each party during the marriage and held in such party's name." Under another provision, each party "forever releases, relinquishes, waives, quitclaims and grants to the other party" several rights and interests, including the right to a "spousal election."

David had significant health issues and was hospitalized numerous times during the marriage. In early November 2018, David and Myrle moved into a single residential unit in Windsor Manor, an assisted-living facility that could provide additional care for David's needs. However, David was hospitalized on

November 14. After leaving the hospital, David moved to a different care facility and then into the home of his daughter, Julie Hastings (Julie). David and Myrle did not live together after November 14. Myrle continued living at Windsor Manor through December and then moved back into the marital home.

David was involved in two other proceedings at the end of his life that are relevant to the estate action here. First, on October 25, 2018, David filed a petition seeking to appoint his daughters, Jean Easton and Julie, as co-guardians and co-conservators, which the court later granted. On November 20, the initial report and inventory was filed in the guardianship and conservatorship proceeding, which listed David's assets and sources of income at the time. Also on November 20, Myrle's attorney entered an appearance in the guardianship and conservatorship proceeding. On March 4, 2019, the final report was filed and the guardianship and conservatorship was terminated due to David's death.

Second, on January 3, 2019, David filed a petition for dissolution of his marriage to Myrle. On January 7, Myrle answered the petition. On March 18, the dissolution action was dismissed due to David's death with the district court taking no substantive action in the proceeding.

On February 28, 2019, the district court admitted David's will to probate and appointed Julie as executor. David's will left his entire estate to his three children in equal shares. Myrle filed a motion to take her elective share as David's spouse against the will. The estate then filed a petition for declaratory judgment asking the court to declare the prenuptial agreement valid and preclude Myrle from claiming an elective share. Thereafter, Myrle filed a petition to recover from the estate certain expenses she claimed to have paid on David's or his estate's behalf.

A bench trial was held on the estate's petition for declaratory judgment and Myrle's claim for expenses. The district court issued a ruling granting the estate's petition for declaratory judgment, finding the Agreement was enforceable and precluding Myrle from electing to take against David's will. The court also granted Myrle's petition, awarding her $11,014.37 in expenses under a theory of unjust enrichment. Myrle appeals from the declaratory judgment, and the estate cross-appeals from the award of expenses.

## II.     Standard of Review

"Actions . . . for the establishment of contested claims shall be triable in probate as law actions, and all other matters triable in probate shall be tried by the probate court as a proceeding in equity." Iowa Code § 633.33 (2019). The parties both assert the prenuptial issue was tried in equity so our review is de novo, and we agree. *Accord In re Marriage of Shanks*, 758 N.W.2d 506, 511 (Iowa 2008) ("[I]ssues concerning the validity and construction of premarital agreements are equitable matters subject to our de novo review."). For the unjust-enrichment issue, the parties disagree about the standard of review. Myrle asserts we should treat this like a dissolution-of-marriage proceeding with a de novo standard of review. The estate asserts this is a contested-claim action tried in probate, thus this is a law action reviewed for error. *See In re Estate of Dodge*, 281 N.W.2d 447, 449 (Iowa 1979). We agree with the estate that Myrle's claim was tried in probate. However, the district court awarded a judgment to Myrle under unjust enrichment, not as a contested claim. Thus, the unjust-enrichment issue is not an enumerated action under the probate code and was tried in equity. *See* Iowa Code § 633.33. Accordingly, we also review the unjust-enrichment issue de novo. *Accord Iowa*

*Waste Sys., Inc. v. Buchanan Cnty.*, 617 N.W.2d 23, 30 (Iowa Ct. App. 2000) ("As a claim for unjust enrichment is rooted solely in equitable principles, our review is de novo."). Under de novo review, "[w]e give weight to the probate court's factual findings, particularly on the credibility of witnesses, but are not bound by them." *In re Estate of Whalen*, 827 N.W.2d 184, 187 (Iowa 2013).

### III.      Prenuptial Agreement

Myrle argues the parties' Agreement is unenforceable because David failed to make an adequate disclosure of his assets prior to signing the Agreement. Attached to the Agreement is David's disclosure of assets, which lists his residence, vehicles, furniture, and appliances with a net value of $128,000.00. The disclosure does not list two bank accounts or a retirement account belonging to David at the time. Myrle submitted evidence showing the two bank accounts had balances of $2854.35 and $7149.09 and the retirement account had a balance of $70,944.36 at or around the time of the Agreement. If the Agreement is enforceable, there is no dispute the Agreement prohibits Myrle from electing to take the spousal share against David's will.

A prenuptial agreement is unenforceable if the person challenging the agreement shows:

> Before the execution of the agreement the person was not provided a fair and reasonable disclosure of the property or financial obligations of the other spouse; and the person did not have, or reasonably could not have had, an adequate knowledge of the property or financial obligations of the other spouse.

Iowa Code § 596.8(1)(c). This language "requires only 'fair and reasonable' disclosure, or that the party could have had 'adequate knowledge' of the other

party's property and financial obligations." *In re Marriage of Shanks*, 758 N.W.2d 506, 519 (Iowa 2008).

The record shows Myrle had ample opportunity to learn of David's financial accounts. Myrle and David were well acquainted prior to their 2010 marriage, having begun a romantic relationship around 1985. Myrle testified she and David signed the Agreement after a one-hour session with the preparing attorney. The Agreement itself requires signatories to "waive[ ] any right to further disclosure of the property and financial obligations of the other party beyond that provided by the" disclosures. While Myrle testified she never had an opportunity to review the Agreement with an attorney of her choosing, the preparing attorney testified Myrle was his client for the Agreement. The district court found the attorney credible and concluded he was acting as Myrle's attorney for the Agreement. Even assuming Myrle did not know of David's financial accounts, Myrle testified that, had the nondisclosed assets been disclosed, she would still have signed the Agreement.

Furthermore, the record indicates Myrle had at least "adequate knowledge" of David's finances. Prior to marriage, Myrle testified she knew David used checks and helped pay for the couple's large purchases, including vacations costing thousands of dollars. Neither party listed their financial accounts in their disclosures for the Agreement, suggesting Myrle was aware these disclosures did not include financial accounts. Myrle and David both worked as police officers in Des Moines before retirement. Myrle testified she knew Des Moines police officers commonly held accounts at one financial institution in question; indeed, Myrle had her own accounts at the institution. Myrle was receiving a police retirement worth approximately $3100.00 per month when she signed the Agreement, and she

testified she knew David should be receiving at least approximately the same amount from his police retirement benefits.

On our de novo review of the record, and placing weight on the credibility determinations of the district court, we find Myrle failed to prove she "did not have, or reasonably could not have had, an adequate knowledge of" David's undisclosed financial accounts. Iowa Code § 596.8(1)(c). Therefore, we affirm the declaratory judgment of the district court finding the Agreement enforceable and precluding Myrle from claiming the elective spousal share against David's will.

## IV. Unjust Enrichment

Under a theory of unjust enrichment, the district court awarded Myrle $11,014.37 for expenses she paid in the final months of David's life. These expenses comprised $465.00 for insuring David's home, $885.63 for insuring David's vehicles, $263.74 for David's convalescent care, and $9400.00 for David's share of the rent for Windsor Manor. The estate cross-appeals this award of expenses.

"Unjust enrichment is rooted in the principle that one party should not be unjustly enriched at the expense of another party." *Endress v. Iowa Dep't of Hum. Servs.*, 944 N.W.2d 71, 80 (Iowa 2020). "Unjust enrichment has three basic elements: '(1) enrichment of the defendant, (2) at the expense of the plaintiff, (3) under circumstances that make it unjust for the defendant to retain the benefit.'" *Id.* (quoting *Behm v. City of Cedar Rapids*, 922 N.W.2d 524, 577 (Iowa 2019)).

Iowa recognizes a presumption of gratuity between family members, which "is very strong as between husband and wife." *Ferris v. Barrett*, 95 N.W.2d 527, 530–31 (Iowa 1959). The district court found Myrle overcame this presumption by

showing she and David maintained separate property and financial accounts and their marriage was strained at the time of payment. While Myrle and David maintained separate property and financial accounts, their interests were still intertwined. Myrle and David shared a living unit at Windsor Manor until David left for the hospital. Myrle lived in the marital home covered by the insurance policy before and after she lived at Windsor Manor, and she presumably owned property in the marital home that was covered by this insurance policy. Myrle drove one of David's vehicles covered by the insurance policy. Due to their intertwining interests, Myrle was likely personally responsible for at least some of David's bills that she paid. In particular, the rent for Windsor Manor—the largest expense in her claim—was due pursuant to a lease she signed, and the lease likely made her responsible for the entire amount due if David failed to pay his share.

Furthermore, Myrle never testified to any great strain on her marriage to David. Rather, her answer to the petition for dissolution alleged David's decision to file the petition "was influenced by outside individuals," indicating Myrle believed any strain in the marriage was not between herself and David. Myrle showed no hesitation in paying these expenses, as she repeatedly testified she voluntarily paid all bills in question as they arrived.

On our de novo review of the record, we conclude Myrle paid the claimed expenses for her own benefit and for the benefit of her marriage. To the extent David benefited from Myrle's payment of these expenses, Myrle has not overcome the presumption that she paid these expenses as a gratuity to her husband. We do not find David or his estate was unjustly enriched by Myrle's payment of these

expenses, and we reverse the district court's award of expenses under a theory of unjust enrichment.

## V.      Conclusion

On appeal, we find Myrle failed to prove she at least reasonably could not have had adequate knowledge of David's undisclosed financial accounts. Therefore, we affirm the declaratory judgment of the district court finding the Agreement enforceable and precluding Myrle from claiming the elective spousal share against David's will.  On cross-appeal, we do not find David or his estate were unjustly enriched by Myrle's payment of expenses she attributes to David arising during their marriage.  Therefore, we reverse the district court's award of expenses to Myrle under a theory of unjust enrichment.

**AFFIRMED ON APPEAL.  REVERSED ON CROSS-APPEAL.**