# IN THE SUPREME COURT OF IOWA

No. 19–2088

Submitted January 21, 2021—Filed February 19, 2021

**IN THE MATTER OF THE GUARDIANSHIP AND CONSERVATORSHIP OF VERNON D. RADDA**

**KEVIN KIENE** and **BARBARA KIENE,**

Appellants,

vs.

**WASHINGTON STATE BANK,** as Conservator for Vernon D. Radda,

Appellee.

---

Appeal from the Iowa District Court for Washington County, Crystal S. Cronk, Judge.

Family members appeal ruling on declaratory judgment declining to adjudicate validity of wills while the ward is still alive, and requiring challengers to pay the conservator's attorney fees. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR DISMISSAL.**

Waterman, J., delivered the opinion of the court, in which all justices joined.

Siobhan Briley (argued) of Pugh Hagan Prahm PLC, Coralville, for appellants.

R. Ronald Pogge and Chandler M. Surrency (argued) of Hopkins & Huebner, P.C., Des Moines, for appellee Washington State Bank, as conservator for Verdon D. Radda.

**WATERMAN, Justice.**

In this interlocutory appeal, we must decide whether a prospective heir can bring a declaratory judgment action under Iowa Code section 633.637 (2019) to determine the validity of wills before the testator dies. The ward executed wills in 1992 and 2015 while he was in a voluntary conservatorship and without any contemporaneous judicial determination of his testamentary capacity. The ward's sister and her husband brought this declaratory judgment action in 2019 to determine the validity of those wills. The conservator bank filed a motion to dismiss the action, arguing the petitioners' claims were not ripe and they lacked standing to challenge the wills while the testator remained alive. The district court denied the motion to dismiss, but in response to the conservator's motion to enlarge, then limited the scope of the action to a determination of the ward's present testamentary capacity and required the petitioners to pay the conservator's attorney fees. We granted the petitioners' application for interlocutory appeal and retained the case.

On our review, we hold that neither section 633.637 nor other provisions of the Probate Code permit a challenge to the validity of a will executed by a testator who is still living. This legislative choice to avoid predeath will contests makes sense, because the testator might execute a new will or the beneficiaries might predecease the testator, wills are confidential while the testator remains alive, and a postdeath challenge to a will in probate would include notice to all potentially affected parties with trial by jury. For the reasons elaborated below, we affirm the district court's ruling declining to adjudicate the validity of the ward's 1992 or 2015 wills. The district court erred, however, by allowing the action to proceed for a determination of the ward's present testamentary capacity and by requiring the petitioners to pay the conservator's legal fees. We

reverse those rulings. No relevant fee-shifting statute applies, and the petitioners' claims were not frivolous.

## I. Background Facts and Proceedings.

Vernon D. Radda, now age fifty-nine, suffers from schizoaffective disorder and severe autism spectrum disorder. He resides at the Pearl Valley care facility in Washington, Iowa. Until 1991, his mother, Betty Jean Radda, cared for him. In June of that year, a guardianship and conservatorship was set up for Betty Jean because she had suffered a stroke and was unable to care for herself. Vernon agreed to a separate guardianship and conservatorship established for him that has remained in place since 1991. His sister, Julie Zieser, was appointed his guardian, and Washington State Bank his conservator. After Julie died, her husband and son, Wayne and David Zieser, were appointed Vernon's coguardians.

In 2017, Radda told another sister, Barbara Kiene, that he had recently signed some documents. Barbara asked what documents he had signed, and whether it was a will. Radda responded that he did not know. Barbara and her husband, Kevin Kiene, investigated and discovered Radda had executed two wills, one in 1992 and another in 2015. The attorney who prepared the 1992 will filed an affidavit regarding compensation, stating that he met with Radda twice, including a conference to sign the will. Julie filed an accompanying "itemized time" list to support her compensation. Julie's list indicated that she took Radda to the attorney's office on the date the will was executed but does not include the initial conference. The 2015 will was also prepared by an attorney. The 1992 will was deposited with the court and was later replaced by the 2015 will. Neither will is found in the record on this appeal. Radda, as of the conservator's 2018 annual report, had assets

including investments and real property with a total value exceeding $1.9 million.

On May 13, 2019, the Kienes filed a petition to commence this declaratory judgment action seeking a judicial determination of whether Radda had the testamentary capacity to execute either will, and if not, to declare the will null and void. On August 1, the conservator filed a preanswer motion to dismiss the petition, arguing that the claims were not ripe because Radda was still alive and probate had not been filed (and could not be filed). The conservator argued that the Kienes lacked standing to bring the action before Radda's death because they had no vested interest in his estate. Finally, the conservator requested the court sanction the Kienes under Iowa Rule of Civil Procedure 1.413 by ordering them to pay the conservator's attorney fees.

The Kienes resisted, arguing that they were not asking the court to probate the wills, but rather were seeking a judicial determination whether Radda had testamentary capacity when he executed them because, as they contended, both wills were presumptively invalid under Iowa Code section 633.637. The conservator replied, arguing that section 633.637 does not allow third parties to petition the court for a determination of testamentary capacity. The conservator also disputed the presumption of incompetency and reiterated that the issue was not ripe while Radda remained alive.

On September 6, the court denied the conservator's motion to dismiss, ruling that Radda's right to execute a will was "uncertain and appropriate for declaratory judgment." The conservator filed a motion to enlarge, asking the court to clarify: (1) whether the action involved a determination of Radda's present capacity to execute a will or past capacity to execute the 1992 or 2015 will; (2) whether the determination would bind

all heirs or just the Kienes; and (3) whether Radda would be responsible for the costs of the action. The Kienes resisted, arguing that the petition itself clarified that the requested determination regarded Radda's capacity to execute the 2015 will and, if invalid, the 1992 will. They also argued that the court had to determine whether the will was valid before it determined who would be bound by the court's ruling. Finally, the Kienes contended that the parties should pay their own attorney fees.

On November 14, the conservator's counsel contacted counsel for the Kienes, stating that it had been "quite a while" since the motion to enlarge had been filed, and that when he inquired with the court administrator, he was told to submit a proposed order. Counsel attached a copy of the proposed order in his letter to the Kienes. This order, adopted by the court five days later, stated that the declaratory judgment would only involve a determination of Radda's present testamentary capacity, would bind Radda "as to his current ability" but not "affect his competency at other times," and that the Kienes would be responsible for the costs of the action including the conservator's attorney fees.

The Kienes filed an application for interlocutory appeal and motion to stay, arguing the ruling was outcome determinative. The conservator resisted. We granted the application and retained the appeal.

## II. Standard of Review.

"We review a district court's ruling on a motion to dismiss for the correction of errors at law." *Benskin, Inc. v. W. Bank*, 952 N.W.2d 292, 298 (Iowa 2020) (quoting *Shumate v. Drake Univ.*, 846 N.W.2d 503, 507 (Iowa 2014)). "We review the probate court's interpretation of statutory provisions for corrections of errors at law." *In re Est. of Whalen*, 827 N.W.2d 184, 187 (Iowa 2013).

The Kienes complain that the order we are reviewing was prepared by the conservator's counsel. We do not apply "a higher standard of review" when the court adopts verbatim a proposed ruling drafted by a prevailing litigant. *NevadaCare, Inc. v. Dep't of Hum. Servs.*, 783 N.W.2d 459, 465 (Iowa 2010). But "we will scrutinize the record more closely and carefully when performing our appellate review." *Id.*[1] The Kienes correctly state that we need not decide whether this is an action at law or in equity because we are reviewing the district court's legal conclusions that are not binding on the appellate court. *See id.* ("The trial court's 'legal conclusions and application of legal principles are not binding on the appellate court.' " (quoting *EnviroGas, L.P. v. Cedar Rapids/Linn Cnty. Solid Waste Agency*, 641 N.W.2d 776, 781 (Iowa 2002))).

We review de novo the district court's ruling allowing an award of attorney fees for defending litigation under the Probate Code. *See In re Est. of Bockwoldt*, 814 N.W.2d 215, 221–22 (Iowa 2012). We review de novo an award of attorney fees allowed under the court's equitable powers. *Hockenberg Equip. Co. v. Hockenberg's Equip. & Supply Co. of Des Moines*, 510 N.W.2d 153, 158 (Iowa 1993).

---

[1]We continue to "recognize[] counsels' submission of proposed findings of fact and conclusions of law can be extremely valuable in assisting the district court, especially in highly technical or complicated cases." *NevadaCare*, 783 N.W.2d at 465. But we reiterate that the district court should not adopt verbatim a proposed ruling prepared by the prevailing attorney such that "the decision on review reflects the findings of the prevailing litigant rather than the court's own scrutiny of the evidence and articulation of controlling legal principles." *See id.* (quoting *Rubes v. Mega Life & Health Ins.*, 642 N.W.2d 263, 266 (Iowa 2002)). Here, we are not reviewing voluminous factual findings written by one side. We are reviewing terse conclusions of law on a limited record. Although prompted by an ex parte phone call with the court administrator, the proposed ruling drafted by the conservator's attorney was not submitted ex parte but was simultaneously filed and served on the Kienes' counsel who had time to respond before the court ruled the following week.

### III. Analysis.

We first address whether the Probate Code, and specifically Iowa Code section 633.637, permits the Kienes to challenge the validity of Radda's wills while he remains alive. We hold that will contests must await the testator's death, and the Code does not allow this declaratory judgment action to proceed. Next we address whether the district court erred by ordering the Kienes to pay the conservator's attorney fees without an applicable fee-shifting statute. We apply the American rule to hold that the conservator must bear its own attorney fees.

**A. Section 633.637 Does Not Permit a Third Party to Contest a Will of a Testator Who Is Still Living.** The Kienes argue that Iowa Code section 633.637 permits an interested third party to seek a judicial determination that the ward lacked testamentary capacity to execute a will while in a conservatorship. Barbara Kiene is Radda's sister and would inherit from Radda's estate under intestacy provisions if both his wills were determined to be invalid. Iowa Code § 633.219(3). She therefore asserts that she is an "interested party" under the Probate Code with standing to bring this declaratory judgment action under Iowa Code section 633.637 to challenge the validity of Radda's 1992 and 2015 wills while Radda remains alive. The conservator responds that the statute does not permit a third party to bring an action to challenge a will while the ward is alive. This is a question of statutory interpretation and we begin with the statutory text.

Iowa Code section 633.637 is entitled, "Powers of ward," and provides:

> A ward for whom a conservator has been appointed shall not have the power to convey, encumber, or dispose of property in any manner, other than by will if the ward possesses the requisite testamentary capacity, unless the

court determines that the ward has a limited ability to handle the ward's own funds. If the court makes such a finding, it shall specify to what extent the ward may possess and use the ward's own funds.

Any modification of the powers of the ward that would be more restrictive of the ward's control over the ward's financial affairs shall be based upon clear and convincing evidence and the burden of persuasion is on the conservator. Any modification that would be less restrictive of the ward's control over the ward's financial affairs shall be based upon proof in accordance with the requirements of section 633.675.

We see nothing in the text of this statute that creates rights in a putative beneficiary or other third party to challenge the validity of a ward's will before the ward dies, and we have never construed this statute to allow such a challenge.

The parties disagree whether section 633.637 requires the court to contemporaneously authorize a ward to execute a will. In our view, the phrase "other than by will" expressly exempts wills from the statute's requirement that the court preapprove property transfers. *See Conservatorship of Rininger v. Rininger*, 500 N.W.2d 47, 50 (Iowa 1993) ("Without securing prior court approval, a ward is not allowed to dispose of property in any manner *other than by will.*" (emphasis added)). But this exception for wills is qualified by the phrase, "if the ward possesses the requisite testamentary capacity." The Kienes argue that Radda's 1992 and 2015 wills are invalid as a matter of law, or at least presumptively invalid, because he executed each will without a contemporaneous judicial determination of his testamentary capacity. The plain language of the statute, however, only requires a judicial determination to preapprove inter vivos transfers, that is, dispositions of property "other than by will." If the legislature wanted to require the court to preapprove the ward's

execution of a will it would have said so, as it did for inter vivos transfers and as other legislatures have done.[2]

We conclude that section 633.637 does not allow the Kienes to challenge the validity of Radda's wills regardless of the lack of a contemporaneous judicial determination of his testamentary capacity in 1992 or 2015. Our conclusion is reinforced by an examination of chapter 633 as a whole. "We read interrelated statutes together in a manner that harmonizes them if possible." *In re Tr. #T-1 of Trimble*, 826 N.W.2d 474, 483 (Iowa 2013).

Chapter 633 contains numerous sections expressly providing specified powers and rights to interested persons. *See, e.g.*, Iowa Code §§ 633.42, .53, .65, .83, .94, .97, .122, .186, .216, .247, .253, .256, .290, .308, .310, .354, .375, .377, .394, .469, .489, .518, .561. When the legislature wants to allow an interested party a right to sue in the Probate Code, it says so expressly as it did most notably in section 633.308 for postdeath will contests. *See id.* § 633.308 ("Any interested person may petition to set aside the probate of a will by filing a written petition in the probate proceedings."). Section 633.637 omits the term "interested person" and textually provides no third party with the right to sue for a determination of the ward's testamentary capacity. "[L]egislative intent is expressed by omission as well as by inclusion . . . ." *Marcus v. Young*, 538 N.W.2d 285, 289 (Iowa 1995). We have observed "the legislature's selective

---

[2]Of course the ward or conservator at their option may petition the court to determine the ward's testamentary capacity under section 633.637 before a will is executed, and doing so may well be the better practice. But we do not read this statute as requiring such preapproval. Other state legislatures have codified specific requirements for a ward to execute a will. *See* Ralph C. Brashier, *Conservatorships, Capacity, and Crystal Balls*, 87 Temp. L. Rev. 1, 27–28 (2014) (surveying states and noting "statutes in a few states do place or permit additional restrictions on conservatees that make it considerably more difficult, if not impossible, for them to make a will" (footnotes omitted)).

inclusion of [a] phrase . . . to be dispositive." *Oyens Feed & Supply, Inc. v. Primebank*, 808 N.W.2d 186, 194 (Iowa 2011); *see also Chesnut v. Montgomery*, 307 F.3d 698, 701 (8th Cir. 2002) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (alteration in original) (quoting *Russello v. United States*, 464 U.S. 16, 23, 104 S. Ct. 296, 300 (1983))); *Freedom Fin. Bank v. Est. of Boesen*, 805 N.W.2d 802, 812 (Iowa 2011) (same). The legislature's omission of any mention of an interested person in section 633.637—when that term appears in many other sections of the Probate Code—makes clear that the legislature did not provide third parties with a right to contest a will while the ward is still living. We will not "extend, enlarge, or otherwise change the meaning of a statute under the guise of construction." *Doe v. Iowa Dep't of Hum. Servs.*, 786 N.W.2d 853, 858 (Iowa 2010). So we must decline to add a third-party standing provision into section 633.637 that the legislature chose to omit.

The Kienes argue that under section 633.637 a will that is executed without a contemporaneous judicial determination of the ward's testamentary capacity must be presumed invalid (thereby placing the burden of proof on the will's proponent). This would require judicial preapproval to avoid a conflict with other Code provisions that presume the validity of a properly signed will. *See* Iowa Code § 633.279 (outlining the requirements for formal execution of a "valid" will); *Est. of Gruis v. Winnebago Cnty.*, 207 N.W.2d 571, 573 (Iowa 1973) ("The burden of proof is on contestants in a will contest to establish testator at the exact time of the making of the will lacked one or more of the essentials of testamentary capacity."). We disagree with the premise of the Kienes' argument.

In our view, the fact Radda has been in a voluntary conservatorship since 1991 does not raise a presumption that he lacked testamentary capacity in 1992, 2015, or now. *See In re Est. of Springer*, 252 Iowa 1220, 1232–33, 110 N.W.2d 380, 388 (1961).[3] "Courts have often stated that the imposition of a conservatorship over a person's assets is not a determination that the individual lacks testamentary capacity, because the capacity required to manage one's assets is greater than that required to devise them." Ralph C. Brashier, *Conservatorships, Capacity, and Crystal Balls*, 87 Temp. L. Rev. 1, 1 (2014) [hereinafter Brashier]. For example, a ward may presently lack the acumen to manage a complex farming operation, yet be well aware that he owns the farm and know whom he wants to inherit it. *See id.* at 21 ("A person may be unable to manage assets and yet know what those assets are and whom she wants to receive them." (footnote omitted)). "Since the fundamental inquiries in a conservatorship proceeding and a will contest alleging lack of testamentary capacity are different, the 'practically . . . universal rule' developed that a determination that an individual requires a conservator is not a determination that the individual lacks testamentary capacity." *Id.* at 13 (footnotes omitted) (quoting *Est. of Hall v. Hall*, 195 P.2d 612, 615 (Kan. 1948)); *see also id.* at 3 n.12 (collecting cases). Our interpretation of section 633.637 protects the ward's autonomy consistent with this

---

[3]The burden is on the party challenging the will to show the testator lacked the mental capacity "1. To understand the nature of the instrument he is executing; 2, to know and understand the nature and extent of his property; 3, to remember the natural objects of his bounty, and; 4, to know the distribution he desires to make." *Springer*, 252 Iowa at 383, 110 N.W.2d at 383; *see also Gruis*, 207 N.W.2d at 573 (same). By contrast, a conservatorship may be opened when the proposed ward's "decision-making capacity is so impaired that the person is unable to make, communicate, or carry out important decisions concerning the person's financial affairs." Iowa Code § 633.566(2)(*a*).

nearly universal rule[4] and avoids a presumption of invalidity in conflict with other provisions of the Iowa Probate Code.

The Kienes primarily rely on unpublished cases to support their contention that they can challenge the validity of Radda's wills before he dies.[5] But in most states will contests must await the testator's

_____

[4]Our interpretation of section 633.637 also supports the policy recommendations from the Iowa Guardianship and Conservatorship Reform Task Force. *See* Iowa Guardianship & Conservatorship Reform Task Force, *Final Report* (2017), https://www.iowacourts.gov/static/media/cms/Final_Task_Force_Report_5A992F4D4 AF86.pdf [https://perma.cc/7RKD-TMAF]. We formed the task force, comprised of more than seventy individuals, and chaired by Justice Bruce Zager, with University of Iowa College of Law Professor Josephine Gittler and Drake University Law School Professor Jerry Foxhoven as coordinators and reporters, "to address the challenges that the Iowa guardianship and conservatorship system faces now and will face in the future in meeting the needs of vulnerable Iowans." *Id.* at iv. The task force report emphasized the need to respect, "to the extent feasible," the "autonomy and self-determination of persons subject to guardianships and conservatorships." *Id.* at 5. For example, the report recommends that "[t]he conservator should manage the financial affairs of the protected person in a way that maximizes his or her dignity, autonomy, and self-determination." *Id.* at 80. More specifically, that "[t]he conservator, consistent with the Iowa Code and court orders, should exercise authority only as necessitated by the cognitive and functional limitations of the protected person." *Id.* The task force recommended changing the term "ward" in the Iowa Code, court rules, and legal instruments to "person subject to guardianship" and "person subject to conservatorship." *Id.* at 13. We use "ward" throughout this opinion because that is the term still used in chapter 633.

[5]The Kienes rely on these cases to argue that a testator's capacity may be challenged before the testator dies. None of these cases are binding on our court, and the decisions offer at best tangential support for the Kienes' position. *See In re Guardianship of Hanken*, No. 18–1368, 2019 WL 719048, at *1 (Iowa Ct. App. Feb. 20, 2019) (ward herself, not a third party, brought petition to terminate guardianship and conservatorship and sought determination of her right to execute a new will); *In re Guardianship of Driesen*, No. 08–1311, 2009 WL 1491871, at *1–2, *4 (Iowa Ct. App. May 29, 2009) (rejecting challenge to validity of a trust amendment while trustee remained alive based on finding that trustee had sufficient capacity to amend trust); *In re Guardianship & Conservatorship of Est. of Tennant*, 714 P.2d 122, 125–26 (Mont. 1986) (validity of will properly determined in probate proceeding *after* testator died); *In re Tr. of Niles*, 823 A.2d 1, 10 (N.J. 2003) (holding that trustee removed for undue influence is liable to estate for attorney fees incurred to restore assets); *In re Sable*, No. A–3743– 06T23743–06T2, 2009 WL 321558, at *3–4, *8, *10 (N.J. Super. Ct. App. Div. Feb. 11, 2009) (per curiam) (affirming order invalidating will of living testator but noting "the legal argument that the trial court improperly determined the validity of a will when the testator was still living . . . was not made before [the court], and an issue not properly raised below may not be raised on appeal"); *In re Cohen*, 760 A.2d 1128, 1141 (N.J. Super. Ct. App. Div. 2000) ("We agree with the Chancery Division judge's ruling that it would be premature for any party to contest Henrietta's will and trust while she is alive."); *In re*

death.[6]  Iowa is no exception.  *See In re Est. of Lundgren*, 250 Iowa 1233, 1236–37, 98 N.W.2d 839, 841 (1959) ("The essential characteristic of a

_____

*Armster*, No. M2000–00776–COA–R3–CV, 2001 WL 1285904, at *6–7, *12, *18 (Tenn. Ct. App. Oct. 25, 2001) (affirming trial court rulings rejecting challenge to will and imposition of involuntary conservatorship while testator remained alive).

[6]*See, e.g.*, *Fenstermaker v. PNC Bank, Nat'l Ass'n*, No. 3:17–cv–00778 (JAM), 2018 WL 1472521, at *5–6 (D. Conn. Mar. 26, 2018) (collecting cases and stating "[p]laintiff's claims to invalidate his father's will and revocable trust are not ripe for adjudication.  As no more than a theoretical beneficiary of the will and the trust, plaintiff presently has no imminent or actual injury"); *Hodge ex rel. Skiff v. Hodge*, 78 F. Supp. 2d 29, 33 (N.D.N.Y. 1999) (declining to rule on the validity of the testator's will because she was alive and "it is premature to interpret or invalidate a will that has not yet been admitted to probate because the testator is still alive"); *In re Est. of Henry*, 919 N.E.2d 33, 36–37, 40–41 (Ill. App. Ct. 2009) (collecting cases and concluding that "[j]ust as appellants [putative beneficiaries] would lack standing to bring a judicial challenge during Henry's life if Henry had regained his mental faculties and executed a new will overriding the 2004 will and eliminating their shares in his legacy, so too do they lack standing" to challenge the ruling allowing the ward's guardian to execute new will); *Lloyd v. Wayne Cir. Judge*, 23 N.W. 28, 29–30 (Mich. 1885) (Campbell, J., concurring) (noting that "[j]udicial proceedings to probate a will while the testator is living, are unheard of in this country or in England" and the practical problems it would present, including the fact that the living cannot have heirs, a relator may "dispose of his entire property" before death, and the relator may move before he or she dies so that the estate is beyond the jurisdiction of the county in which he or she currently lives); *Alexander v. Walden*, 337 S.E.2d 241, 243 (S.C. Ct. App. 1985) (reversing the lower courts' determination regarding the validity of the will, because "[t]he ambulatory nature of a will, and the absence of parties in interest, which result from the rule that a living person has neither heirs nor legatees, render impossible the assumption that a court has power to determine the validity of a will prior to the death of the maker"); *Pond v. Faust*, 155 P. 776, 778 (Wash. 1916) (en banc) ("[C]ourts have no power to inquire into the validity of wills prior to the death of the maker, to determine the *incompetency* of the maker.").  A few states (but not Iowa) have enacted "living probate" statutes allowing a determination of a will's validity before the testator dies.  Kyle Frizzelle, Comment, *Better to Play Dead? Examining North Carolina's Living Probate Law and Its Potential Effect on Testamentary Disposition*, 39 Campbell L. Rev. 187, 189 n.16 (2017) (identifying Alaska, Arkansas, North Carolina, North Dakota, and Ohio as states with such statutes).  However, these statutes give the *testator* the right to petition a court to determine the validity of the will, not a putative beneficiary such as the Kienes lacking the testator's consent.  *See* Alaska Stat. Ann. § 13.12.530 (West, Westlaw current through 2020 Second Reg. Sess. 31st Leg.) (providing a testator, a personal representative nominated in the will, or an interested party—with the testator's consent—may petition the court); Ark. Code Ann. § 28–40–202(a) (West, Westlaw current through 2021 Reg. Sess. 93rd General Assemb.) (providing that an individual who executes a will may request a declaratory judgment to establish the will's validity); N.C. Gen. Stat. Ann. § 28A–2B–1(a) (West, Westlaw current through 2020 Reg. Sess. 2020) (same); N.D. Cent. Code Ann. § 30.1–08.1–01 (West, Westlaw current through 2019 Reg. Sess. 66th Legis. Assemb.) (same); Ohio Rev. Code Ann. § 5817.02(A) (West, Westlaw current through 133rd Gen. Assemb. (2019–2020)) (limiting predeath challenges to a testator and

testamentary instrument is that it operates only upon and by reason of the maker's death. Until then it is ambulatory. By its execution the maker parts with no rights and divests himself of no part of his estate and no rights accrue to, or vest in, any other person [before his death].”); *see also Birkhofer ex rel. Johannsen v. Birkhofer*, 610 N.W.2d 844, 847 (Iowa 2000) (en banc) (“[T]he mere intestate claim of a daughter in the potential estate of her living mother is too contingent to constitute a legal interest sufficient to establish standing.”).

Will contests are governed by Iowa Code sections 633.308–.320. Iowa Code section 633.308 provides in full, “Any interested person may petition to set aside the probate of a will by filing a written petition in the probate proceedings. The petition for such purpose shall state the grounds therefor.” A will cannot be probated until after the testator dies. Iowa Code § 633.290. No provision of the Iowa Probate Code allows an action to set aside a will while the testator is alive.[7]

We recently held that a common law action for tortious interference with an inheritance must be joined with a timely will contest. *Youngblut v. Youngblut*, 945 N.W.2d 25, 38–40 (Iowa 2020). We did so based on Iowa's legislative scheme for will contests, including trial by jury, the joinder of interested parties, heirs and proponents of the will, and the need for finality, “prompt and effective estate administration” and a “final and

---

expressly prohibiting a testator's guardian or agent under the testator's power of attorney from filing a complaint to determine the validity of the will or to voluntarily dismiss a complaint). Even in a state that allows a predeath determination of a will's validity, the Kienes, without the testator's consent, would lack standing. *See also* David L. Skidmore & Laura E. Morris, *Before the Party's Over: The Arguments for and Against Pre-Death Will Contests*, 27-APR Prob. & Prop. 50, 50–51 (2013) (collecting cases and stating that the majority of states refuse to determine the validity of a will during the testator's lifetime).

[7]The Kienes argue this “is not a will contest” but the relief they seek is a declaration that Radda's 1992 and 2015 wills are invalid because there was no judicial determination of his testamentary capacity at those times.

conclusive distribution." *Id.* at 37. We declined to allow such claims "to go forward outside normal probate deadlines and proceedings." *Id.* at 38. Our reasoning in *Youngblut v. Youngblut* cuts against creating a new predeath will contest procedure that evades the existing statutory safeguards for will contests.

With Iowa's detailed legislative scheme in place for will contests, we must decline the Kienes' invitation to read between the lines of section 633.637 to judicially create a new, separate mechanism for a predeath will contest. Although allowing challenges to wills under section 633.637 during the ward's life may avoid some postdeath will contests, it might generate unnecessary challenges to wills that are never probated. In our view, it makes more sense to defer challenges to a will to formal probate proceedings after the testator's death, when the rights of all affected parties can be determined and questions of capacity or undue influence can be decided by a jury as the conscience of the community.[8] We see good practical reasons not to stray from the legislature's chosen statutory scheme. Predeath challenges to wills may be a waste of time—the testator might replace the will at issue with a new one, die without property, or the challenger might die before the testator.[9] The testator is entitled to keep

---

[8]*See* Iowa Code § 633.311 (providing that the rules of civil procedure, including demand for jury trial, governs an action to set aside a will).

[9]The legislature has allowed for modification or termination of irrevocable trusts by the court with consent of all beneficiaries before the death of the settlor in certain circumstances. *See* Iowa Code § 633A.2203. This understandably applies to irrevocable trusts, but not revocable trusts, because, like wills, a settlor may change or revoke his or her revocable trust before death. *See id.* § 633A.3102; *id.* § 633.284. Moreover, just as will contests can only be brought after the death of the testator, challenges to revocable trusts must wait until after the settlor's death. *See id.* § 633A.3108; *see also Alexander v. Walden*, 337 S.E.2d 241, 242–43 (S.C. Ct. App. 1985) (addressing claims of undue influence and incompetence as to an irrevocable trust, but reversing the lower court's determination that her will was valid, because the court had no power "to determine the validity of a will prior to the death of the maker").

the terms of the will confidential before his death;[10] yet a predeath challenge might invade the testator's privacy interest or reveal terms the challenger would accept, making the challenge unnecessary or generating unwanted discord among family members. There is no right to a jury trial in conservatorship proceedings under section 633.637 and questions of testamentary capacity and undue influence are better determined by a jury than a lone judge. The testator's heirs and beneficiaries have a stake in the outcome; while their rights are protected in probate, if we allow a family member to challenge a will in a conservatorship proceeding under section 633.637, the result might be to disinherit a charity or other beneficiary without providing them notice and an opportunity to be heard.

The Kienes make a policy argument that allowing the claims by family members to adjudicate a ward's testamentary capacity would advance the purpose of the conservatorship: protection of the ward. "Policy arguments to amend the statute should be directed to the legislature." *Whalen,* 827 N.W.2d at 194. It is the role of the court and the conservator to protect the ward. Family members may have their own conflicts of interest with the ward. *See* Brashier, 87 Temp. L. Rev. at 15 ("Petitioners often seek to have the conservatorship court strip the respondent of her right to make a will to protect their own interests under the respondent's existing estate plan."). The Kienes do not allege that Radda was unprotected or subjected to improper influence when he

---

[10]*See* Iowa Code § 622.10 (codifying attorney–client privilege); *id.* §§ 633.288 (requirement that during the testator's life, only the testator or "some person authorized by the testator by an order in writing duly acknowledged" may have access to the will), .289 (requirement that the clerk must notify the indorsed individual, if any, when the clerk is informed of the testator's death, and if no petition for probate is filed within thirty days of the testator's death, the will becomes publicly opened).

executed the wills in 1992 or 2015.[11]  The Code provides other procedures to protect a ward from a bad conservator.  A conservator is a fiduciary, and a beneficiary may request the court to remove a fiduciary who mismanages the estate or breaches a legal duty.  *See* Iowa Code §§ 633.3(17), .65; *see also Est. of Rutter v. Rutter,* 633 N.W.2d 740, 744, 751 (Iowa 2001) (holding the district court abused its discretion by failing "to remove the executor [at the beneficiary's request] after finding that the executor had made unauthorized disbursements from the trust account and the estate account to his personal advantage").

We hold that the Probate Code and specifically section 633.637 does not allow a predeath will contest.  We therefore affirm the district court's ruling declining to adjudicate the validity of Radda's wills executed in 1992 or 2015.  No party seeks an adjudication of Radda's present testamentary capacity, and we see no valid reason to allow the case to continue while Radda is alive.  Section 633.637 does not allow family members to bring a declaratory judgment action to determine the ward's current testamentary capacity.  *See Birkhofer,* 610 N.W.2d at 847.  Accordingly, we direct the district court to dismiss this action on remand.

**B.  The District Court Erred by Ordering the Kienes to Pay the Conservator's Attorney Fees.**  The district court ordered the Kienes to pay the conservator's attorney fees based on its finding that "it is not in [Radda's] best interest to utilize his funds to defend his competency, when those funds will likely be needed for his care."  The Kienes argue there is no statute or other basis for requiring them to pay the bank's attorney fees.  We agree.

---

[11]The Kienes merely state that while "[i]t is not clear in this case whether the failure to request a determination of Radda's testamentary capacity . . . was the product of ignorance or malfeasance[, i]t is clear, . . . that the determination was required and was not made."

"Iowa follows the American rule: 'the losing litigant does not normally pay the victor's attorney's fees.' " *Thornton v. Am. Interstate Ins.*, 897 N.W.2d 445, 474 (Iowa 2017) (quoting *Rowedder v. Anderson*, 814 N.W.2d 585, 589 (Iowa 2012)). "Generally, attorney fees are recoverable only by statute or under a contract." *Id.* (quoting *Miller v. Rohling*, 720 N.W.2d 562, 573 (Iowa 2006)). "There is a 'rare' common law exception to this rule, permitting recovery of attorney fees when the [party] 'has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.' " *Id.* (quoting *Miller*, 720 N.W.2d at 573).

No exception to the American rule applies here. There is no applicable fee-shifting statute or contract. Nor has the conservator alleged that the Kienes acted in bad faith, vexatiously, wantonly, or for oppressive reasons. Instead, the conservator argues that public policy supports fee-shifting, relying on *In re Marriage of Erpelding*, where we held that Iowa Code section 596.5 prohibits premarital agreements from including a waiver of the right to attorney fees incurred to obtain child or spousal support. 917 N.W.2d 235, 246–47 (Iowa 2018). *Erpelding* is inapposite. Courts have discretion to award attorney fees in marital dissolution actions under Iowa Code chapter 598. *See id.* By contrast, the conservator cites no authority allowing the court to order a third party to pay the conservator's attorney fees. Rather, with court approval, the conservator, as executor in a will contest, may be allowed fees *from the estate*. Iowa Code § 633.315. The conservator's policy arguments for fee-shifting under section 633.637 (to protect the solvency of the estate) should be directed to the legislature. *Whalen*, 827 N.W.2d at 194.

The applicable public policy here is reflected in the American rule under which each side bears its own attorney fees. Indeed, we have cautioned that fee-shifting awards can "chill vigorous advocacy." *First Am.*

*Bank v. Fobian Farms, Inc.*, 906 N.W.2d 736, 751 (Iowa 2018) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S. Ct. 2447, 2454 (1990)). The Kienes presented questions of first impression that we ultimately found without merit. But their claims were not frivolous within the meaning of Iowa Rule of Civil Procedure 1.413(1) (allowing an award of fees as a sanction for frivolous pleadings) and the conservator has abandoned its claim for fees under that rule.

We hold that the conservator was not entitled to recover its attorney fees from the Kienes, and we reverse the district court's fee-shifting order.

## IV. Disposition.

For these reasons, we affirm the district court's ruling denying the Kienes' request to adjudicate the validity of Radda's 1992 or 2015 wills. We reverse the ruling that allowed a determination of Radda's present testamentary capacity. We also reverse the ruling requiring the Kienes to pay the conservator's attorney fees. We remand the case for dismissal.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR DISMISSAL.**